216 N.J. Super. 46 (1987)
522 A.2d 1025
SUPERIOR AIR PRODUCTS CO., PLAINTIFF-RESPONDENT,
v.
NL INDUSTRIES, INC., STATE OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTECTION, DEFENDANTS-APPELLANTS. (TWO CASES)
Superior Court of New Jersey, Appellate Division.
Argued December 10, 1986.
Decided March 17, 1987.
*48 Before Judges FURMAN, SHEBELL and STERN.
Francine Schott, Deputy Attorney General, argued the cause on behalf of the Department of Environmental Protection (W. Cary Edwards, Attorney General, attorney; Michael R. Clancy, Deputy Attorney General, of counsel; Francine Schott, on the brief).
Steven A. Tasher argued the cause on behalf of NL Industries, Inc. (Donovan, Leisure, Newton & Irvine, attorneys; Janet D. Smith, of counsel; Steven A. Tasher, on the brief).
Robert D. Chesler argued the cause on behalf of Superior Air Products, Inc. (Lowenstein, Sandler, Brochin, Kohl, Fisher & Boylan, attorneys; Michael L. Rodburg, Carol A. Surgens and Robert D. Chesler, on the brief).
The opinion of the court was delivered by STERN, J.A.D.
Defendant, NL Industries, Inc. (NL), sold land contaminated with toluene and other hazardous waste to plaintiff, Superior Air Products Co. (Superior). Plaintiff learned of the contamination *49 upon its later attempt to resell the property.[1] Under the provisions of the Environmental Cleanup Responsibility Act (ECRA), N.J.S.A. 13:1K-6 et seq., plaintiff was required to rectify the contamination prior to transfer of title. That act requires a declaration by the New Jersey Department of Environmental Protection (DEP) that there has been no discharge of hazardous substances or waste, or cleanup of such material as directed by DEP, as a precondition of closure, sale or transfer of certain industrial property.
Plaintiff filed suit against NL under the Environmental Rights Act (ERA), N.J.S.A. 2A:35A-1 et seq., for enforcement of the Spill Compensation and Control Act (Spill Act), N.J.S.A. 58:10-23.11 et seq., and for other relief directed to requiring NL to be responsible for the cleanup, and against DEP to compel an enforcement action against NL pursuant to the Spill Act. A counterclaim by DEP sought an order requiring plaintiff to comply with the provisions of ECRA. The trial court denied NL's motion to dismiss but granted a similar motion of DEP related to the specific relief sought against it. However, over objection of DEP, the court ordered a remand to DEP for investigative proceedings under § 8 of ERA, to determine the party responsible for the cleanup. All trial court proceedings were stayed pending the remand.
Pursuant to leave granted DEP appeals from the remand and NL appeals from the denial of its motion to dismiss. We consolidated the appeals for argument and decision. On the appeal we address only the issues raised on the motions for leave to appeal. We are required to decide the relationship between ERA, N.J.S.A. 2A:35A-1 et seq., the Spill Act, N.J.S.A. 58:10-23.11 et seq., and ECRA, N.J.S.A. 13:1K-6 et seq. We hold that an ECRA proceeding before DEP should not be *50 delayed by the filing or processing of a private suit under ERA or the Spill Act.

I
In its complaint plaintiff alleges that NL is liable for toluene contamination on the property it purchased from NL and therefore is responsible for remediation or cleanup of the contamination.[2] The complaint further asserts causes of action against NL seeking enforcement of the Spill Act and the federal Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C.A. § 9601 et seq., pursuant to § 4(a) of ERA, N.J.S.A. 2A:35A-4(a). Plaintiff also seeks declaratory and equitable relief against NL for the protection of the environment pursuant to § 4(b) of ERA, N.J.S.A. 2A:35A-4(b). Finally, plaintiff seeks damages from NL, a mandatory injunction requiring NL to clean up the property and indemnification from any claims and suits by DEP against plaintiff under ECRA or for costs of cleanup resulting therefrom.
As to DEP, plaintiff seeks a mandatory injunction to compel DEP and its Commissioner to enforce the Spill Act. DEP is also joined as a necessary party by virtue of its ownership of potentially contaminated property adjoining the former NL land and because of the need to secure DEP approval of any remediation to be undertaken. Heraeus-Amersil, another neighboring property owner, is also joined as a necessary party. In its counterclaim DEP seeks enforcement of ECRA against plaintiff.
*51 While granting the motion of DEP and the Commissioner to dismiss because DEP's duty to take action under § 11f(a) of the Spill Act is discretionary, the court ordered DEP to remain a nominal defendant by virtue of its counterclaim and as a necessary party. However, the trial court also remanded plaintiff's ERA claims to DEP to conduct investigatory proceedings. The judge concluded that the remand was required by § 8 of ERA as DEP was the authority responsible under the Spill Act for determining the party liable for the contamination. The court stayed all further proceedings pending the outcome of the administrative investigation and retained jurisdiction.
The court subsequently clarified its original order by making clear that DEP was to conduct a Spill Act investigation to decide the party or parties responsible for the contamination of plaintiff's property contemporaneously with the agency's review of plaintiff's ECRA application.

II
The subject of this controversy is a 10.2 acre section of a 95 acre parcel of land located in Sayreville. Prior to June 1971 NL had owned and used the land for operation of its facility known as the Nalcon Project, which involved the manufacture and storage of toluene. The activity of the project included the presence of toluene storage tanks of 65,000 gallon capacity, a toluene mixing facility of 7,000 gallon capacity, and settling basins both on and off the property. In June 1971 NL sold the 10.2 acre section to plaintiff.
Plaintiff operated its business of fabricating air separation equipment on the property until 1984. Although this business allegedly did not involve the use of toluene the record suggests that plaintiff handled some hazardous waste at the site.
On October 12, 1984 plaintiff entered into a lease and option to buy agreement for the property with Zagata Fabricators Inc. However, compliance with ECRA was required to conclude the sale. Thus, on October 19, 1984 plaintiff filed an ECRA application *52 and later a comprehensive sampling plan with the DEP's Bureau of Industrial Site Evaluation (BISE).
Plaintiff retained the environmental consulting firm of Betz, Converse, Murdoch Eastern, Inc. (BCM) to conduct various soil testing and well monitoring activities at the property. BCM's tests indicated the existence in the soil and ground water of petroleum hydrocarbons as well as toluene, with potential contamination extending to the surrounding properties. Toluene is defined as a hazardous substance. N.J.A.C. 7:1E-Appendix A.
Plaintiff informed NL of the contamination and expressed its expectation of NL's "full cooperation ... in its remediation." BCM's test results were forwarded to BISE on January 18, 1985 and to the Division of Water Resources of DEP on February 4, 1985. BCM characterized the presence of toluene contamination as its "most significant finding...."
Over the next three months plaintiff supplied NL with various data including the BCM test analysis. By letter dated February 6, 1985 plaintiff wrote to NL:
We are approaching the point that all environmental concerns of the property other than the toluene in the ground water are resolved. Hence, it is that contamination which is the proximate cause of our inability to transfer title on this property.
NL described as "vague and deficient" that part of the BCM report describing plaintiff's handling of hazardous substances and wastes at the site, and requested answers to eleven specific queries. By letter dated February 19, 1985, NL also took exception to plaintiff's description of the toluene as
the "proximate cause" of [plaintiff's] inability to transfer title on the property. Along these lines, the January 18, 1985 letter from BCM to the DEP is misleading insofar as it characterizes the presence of toluene as the "most significant finding" of its sampling at the site.
NL noted the presence of other substances at levels higher than that of toluene, considered BCM's data biased and listed other likely sources of toluene.
After review and evaluation, on February 21, 1985 BISE advised plaintiff of its finding that "[t]he presence of toluene in *53 the western edge of the property ... is widespread...." However, it reported that
[b]ecause that data is inadequate ... it is not possible to state that toluene and petroleum hydrocarbons are the only two significant contaminants on-site. A revised sampling plan is needed which addresses [other] areas ... and the western segment of the site.
In any case, BISE concluded that "[b]ased on the data submitted, the site will need a soil clean up."
On June 6, 1985 plaintiff's counsel wrote NL to request a meeting prior to June 23, 1985, the date on which DEP was scheduled to take enforcement action against plaintiff unless a sampling and analysis plan were submitted. That meeting scheduled for June 21, 1985 was "abruptly cancelled" by NL upon which plaintiff's counsel warned "that unless NL Industries exhibits a substantial change in attitude toward this matter ..." plaintiff would pursue "all available legal remedies." NL's reply on July 9, 1985 reiterated its willingness to cooperate through a "full and frank sharing of all available technical information." There appears to be no further meaningful contact between plaintiff and NL. As a result of NL's perceived unwillingness to participate in the cleanup or to pay for it, this suit was commenced. The record reflects that DEP has not, to date, approved any cleanup plan and that ECRA proceedings are scheduled.
The Chancery Division denied NL's motion to dismiss for two reasons. First, the court rejected NL's argument that plaintiff may not enforce the Spill Act under ERA due to the preclusive effect of DEP's ECRA counterclaim. According to the court, that "type of per se rule" is inapplicable under the holding and analysis of Howell Tp. v. Waste Disposal, Inc., 207 N.J. Super. 80 (App.Div. 1986) as well as the broad language of § 4(a) of ERA, N.J.S.A. 2A:35A-4(a), both of which the court read as not preempting a private suit. Second, the court held that plaintiff may enforce the Spill Act under ERA without having to first expend funds on a cleanup. It concluded that the party responsible for the contamination should pay for its remediation, *54 notwithstanding the obligations of the property owner under ECRA. This ruling was based on the relationship between the Spill Act and § 8 of ERA, N.J.S.A. 2A:35A-8, "which requires the court to remit the parties to administrative proceedings if such proceedings are required or available to determine the legality of the alleged discharger's conduct." The court specifically identified those administrative proceedings as "investigative proceedings which would lead to DEP's determination of a responsible party." In this regard, the court emphasized its disagreement
with DEP's position that the administrative proceedings under sec. 8 of the ERA may consist solely of their enforcement of the ECRA process. The administrative proceedings on remand must be geared to determining the responsible party for the contamination on [plaintiff's] property. To allow DEP simply to proceed under ECRA on remand would render useless [plaintiff's] claim against NL under the Spill Act which this court has determined, at least to this point in the litigation, to be valid.
As noted above, the court dismissed the claims for relief against DEP and Commissioner Hughey. Finding the language of the Spill Act, N.J.S.A. 58:10-23.11f(a), dispositive, the court noted that "DEP's duties and responsibilities under the Spill Act [are] discretionary rather than mandatory." However, the court concluded:
Nonetheless, this court has determined that the DEP must commence investigatory proceedings pursuant to sec. 8 of the ERA. Therefore even if this court were to find that DEP had an obligation to do something, that obligation would be satisfied by the proceedings on remand to the DEP. [(emphasis in original)].
At a subsequent hearing the court explained its understanding of ECRA as "another way for us to find out if there's any pollution going on and the one way to do it is when property is transferred." According to the court, it makes no difference "to the people of the State of New Jersey whether the Spill Act or ECRA is implicated...." The court indicated its view that "[t]he question is simply identifying who's going to pay for [the cleanup]...."
*55 Thus the court mandated consideration of the Spill Act and ECRA in the same administrative process. The court amplified its interpretation of § 8 of ERA:
... the statute is that Section 8 of the Environmental Rights Act seems to be a legislative statement, legislative implication, if not a direct statement, that where there is an administrative proceeding available, and available means something that's not mandated but it's there, if there is an administrative proceeding that's there to be used, the Court shall remit the parties to such proceedings which seems to me to be an indication by the legislature that they rather have these, all of these proceedings take place in an administrative setting where the experts supposedly are and where the only review is going to be a review in the appellate sense of whether the government's action is arbitrary and capricious or whether it's supported by reason, except where immediate and irreparable damage will probably result, and that's why I suggested to you if on remand D.E.P. in considering the ECRA and Spill Act together and with reference to this specific property say, Judge, we've considered it, we think that something has to be done now and here are the reasons and this is why we've issued a directive against [plaintiff] to clean up, come back to court and I'll enforce it. That's how I view it.
In essence, the court concluded that DEP had expertise and jurisdiction to determine the party responsible for the contamination and cleanup and that all proceedings should be referred to DEP for investigation and decision. The judge rejected DEP's argument that under ECRA plaintiff is responsible for the cleanup regardless of fault and that the cleanup should not be delayed by investigation or litigation regarding ultimate liability as between plaintiff and NL. While we appreciate the Chancery Division's concern that duplicative proceedings should be avoided and that the entire cost of cleanup should not be imposed upon plaintiff if not responsible for the discharge, we agree with DEP that when an ECRA proceeding is pending, the cleanup should proceed under that act without regard to fault and therefore without the delay incident to a determination of liability.
For reasons to be developed herein we hold that proceedings required under ECRA are not proceedings to which a private Spill Act case can or must be "remitted" and that there is no mandatory remittal to DEP under § 8 of ERA when an ECRA proceeding is pending. Given the legislative history *56 we conclude that an ECRA proceeding is not a proceeding "required or available to determine the legality" of conduct for purposes of an authorized remand to DEP under § 8 of ERA. Given the pending ECRA proceeding it was thus improper to refer the matter to DEP for investigation as to liability as a result of the ERA or Spill Act claims. However, we reject the argument of NL that the ECRA proceedings will be dispositive on the question of responsibility. If NL was responsible for the contamination its ultimate liability can be judicially determined without requiring an investigation or decision by DEP.

III.
In reaching our resolution of the issues raised by this appeal, we find it necessary to consider the various statutes and their respective purposes.
The New Jersey Department of Environmental Protection (DEP) was established in 1970. L. 1970, c. 33 (codified as amended at N.J.S.A. 13:1D-1 et seq.). Its genesis marked the reorganization of the former Department of Conservation and Economic Development by which the functions of that department as well as certain functions of other departments were consolidated in DEP. N.J.S.A. 13:1D-1 to 8. "[I]n addition to the powers and duties vested in it by [the] act or by any other law ..." DEP has power to:
Enter and inspect any building or place for the purpose of investigating an actual or suspected source of pollution of the environment and ascertaining compliance or noncompliance with any code, rules and regulations of the department....
Receive or initiate complaints of pollution of the environment, including thermal pollution, hold hearings in connection therewith and institute legal proceedings for the prevention of pollution of the environment and abatement of nuisances in connection therewith and shall have the authority to seek and obtain injunctive relief and the recovery of fines and penalties in summary proceedings in the Superior Court.... [N.J.S.A. 13:1D-9d & e]
As a result of the legislation designed to protect the public health and welfare DEP has been given wide latitude in exercising its statutory duties. Lom-Ran Corp. v. Department of *57 Environmental Protection, 163 N.J. Super. 376, 384-385 (App. Div. 1978).
The Environmental Rights Act (ERA), N.J.S.A. 2A:35A-1 et seq., was enacted in 1974. L. 1974, c. 169. That statute proceeded upon the Legislature's finding and determination
... that the integrity of the State's environment is continually threatened by pollution, impairment and destruction, that every person has a substantial interest in minimizing this condition, and that it is therefore in the public interest to enable ready access to the courts for the remedy of such abuses. [N.J.S.A. 2A:35A-2].
Standing is provided for in N.J.S.A. 2A:35A-4 which provides:
a. Any person may maintain an action in a court of competent jurisdiction against any other person to enforce, or to restrain the violation of, any statute, regulation or ordinance which is designed to prevent or minimize pollution, impairment or destruction of the environment.

b. Except in those instances where the conduct complained of constitutes a violation of a statute, regulation or ordinance which establishes a more specific standard for the control of pollution, impairment or destruction of the environment, any person may maintain an action in any court of competent jurisdiction for declaratory and equitable relief against any other person for the protection of the environment, or the interest of the public therein, from pollution, impairment or destruction.

c. The court may, on the motion of any party, or on its own motion, dismiss any action brought pursuant to this act which on its face appears to be patently frivolous, harassing or wholly lacking in merit. [(emphasis added)].
"The doctrines of collateral estoppel and res judicata may be applied by the court to prevent multiplicity of suits." N.J.S.A. 2A:35A-10b. Upon the assertion of a claim under § 4b
... the court shall adjudicate the impact of the defendant's conduct on the environment and on the interest of the public therein in accordance with this act. In such adjudication the court may order that additional evidence be taken to the extent necessary to protect the rights recognized in this act. [N.J.S.A. 2A:35A-7b].
However, as plaintiff contends, § 8 provides that

[i]f administrative or other proceedings are required or available to determine the legality of the defendant's conduct, the court shall remit the parties to such proceedings, except where immediate and irreparable damage will probably result, which proceedings shall be conducted in accordance with and subject to the applicable provision of law providing for such proceedings and the provisions of the "Administrative Procedure Act," [N.J.S.A. 52:14B-1 et seq.]. In so remitting the court may grant temporary equitable relief where necessary for the protection of the environment or the interest of the public therein from pollution, impairment or destruction. In so remitting the court *58 shall retain jurisdiction of the action pending completion thereof for the purpose of determining whether the administrative findings made in such proceedings are supported by substantial evidence and the agency action is in conformance with the law. [N.J.S.A. 2A:35A-8 (emphasis added)].
This statute expressly operates as an additional remedy "to existing administrative and regulatory procedures provided by law..." without superseding any "existing civil or criminal remedy now or hereafter available to any person or governmental entity...." N.J.S.A. 2A:35A-12. Liberal construction is mandated. N.J.S.A. 2A:35A-13.
The statute's legislative history is instructive. The sponsor's statement accompanying the bill explained the nature of the right conferred by the statute. It provided in part that
[t]he bill recognizes that the primary responsibility to prosecute polluters rests with government. In those instances where government is unable or unwilling to take the necessary action, any person should be assured of an alternative course of action.
According to the New Jersey State Bar Association Committee on State Legislation which reviewed the bill,
[t]he purpose of the bill is to overturn the doctrine long established in our law that in order to have sufficient standing to sue for abatement or prevention of a public nuisance, a private person must show special damage peculiar to himself and distinct from that done to the public at large.... This bill would effectively grant to interested citizens the right to sue polluters without having to prove special injury to the plaintiffs.... The bill would not change the existing law which requires a litigant to exhaust his administrative remedies except where the interest of justice requires otherwise. See Rule 4:69-5 of the Court Rules.
The Committee further stated that the policy of the bill was that
... interested citizens and groups should have the right to supplement governmental enforcement programs by bringing Court actions in aid of such enforcement.
The ERA thus grants a private person standing to enforce an environmental protection statute as an alternative to inaction by the government which retains primary prosecutorial responsibility. ERA does not itself provide any substantive cause of action. The overall aim of the ERA appears to be to promote vigilant concern for the environment by the creation of a private right to sue for statutory enforcement without a showing *59 of special damages, while at the same time minimizing the potential proliferation of private law suits to those bona fide instances when the government has not acted. This was precisely the conclusion of this court in Howell Tp. v. Waste Disposal, Inc., 207 N.J. Super. 80, 93 (App.Div. 1986) wherein Judge Scalera stated:
A careful reading [of the ERA] reveals that the act was structured deliberately to achieve [the] goal [to insure access to the courts by all persons interested in abating or preventing environmental damage] but not to sacrifice the paramount right of the state to control such action through its delegated agency. [(emphasis in original)].[3]
The Spill Compensation and Control Act (Spill Act), N.J.S.A. 58:10-23.11 et seq., was enacted in 1976. L. 1976, c. 141. In its findings and declaration with respect thereto, the Legislature expressed its intent
by the passage of this act to exercise the powers of this State to control the transfer and storage of hazardous substances and to provide liability for damage sustained within this State as a result of any discharge of said substances, by requiring the prompt containment and removal of such pollution and substances, and to provide a fund for swift and adequate compensation to resort businesses and other persons damaged by such discharge. [N.J.S.A. 58:10-23.11a (emphasis added)].
In contrast to ERA, the statutory scheme of the Spill Act is highly structured and refined, expressly prohibiting discharge of hazardous substances, N.J.S.A. 58:10-23.11c, and imposing strict requirements on owners of major facilities handling hazardous substances to provide certain information to DEP, N.J.S.A. 58:10-23.11d, and providing remedies against those responsible for prior discharge even if no longer the owners or possessors of the property. The statute imposed a standard of strict liability for costs upon any discharge of hazardous substances by providing that:
Any person who has discharged a hazardous substance or is in any way responsible for any hazardous substance which the department has removed or is removing pursuant to [N.J.S.A. 58:10-23.11f(b)] shall be strictly liable, jointly *60 and severally, without regard to fault, for all cleanup and removal costs. [N.J.S.A. 58:10-23.11g(c)].
A liberal construction is mandated, N.J.S.A. 58:10-23.11x, and the statutory remedy is deemed additional to other legal remedies. N.J.S.A. 58:10-23.11v.
The pertinent provisions regarding the initiation of cleanup efforts read as follows:
a. Whenever any hazardous substance is discharged, the department may, in its discretion, act to remove or arrange for the removal of such discharge or may direct the discharger to remove, or arrange for the removal of, such discharge.... The department may monitor the discharger's compliance with any such directive. Any discharger who fails to comply with such a directive shall be liable to the department in an amount equal to three times the cost of such removal, and shall be subject to the revocation or suspension of any license or permit he holds authorizing him to operate a hazardous or solid waste disposal facility.
........
Whenever the department acts to remove a discharge or contracts to secure prospective removal services, it is authorized to draw upon the money available in the fund. Such moneys shall be used to pay promptly for all cleanup costs incurred by the department in removing or in minimizing damage caused by such discharge.
........
b. Notwithstanding any other provisions of [N.J.S.A. 58:10-23.11 et seq.], the department, subject to the approval of the administrator with regard to the availability of funds therefor, may remove or arrange for the removal of any hazardous substance [under certain circumstances]....
........
f. Any expenditures made by the administrator pursuant to this act shall constitute in each instance, a debt of the discharger to the fund. The debt shall constitute a lien on all property owned by the discharger when a notice of lien ... is duly filed with the clerk of the Superior Court.... [N.J.S.A. 58:10-23.11f(a), (b) & (f) (emphasis added)].
N.J.S.A. 58:10-23.11f(a) as it now exists makes clear that DEP has the discretion to perform the cleanup or remediation itself or to direct the responsible party to do so. Compare the original version, L. 1976, c. 141, § 7, ¶ 1. Its discretion, directed to the means of the cleanup, gives DEP flexibility to effect the cleanup by the most appropriate means. However, its *61 actions must be directed to the party responsible for the discharge.
In Howell Tp., supra, we had occasion to interpret the interaction of the Spill Act and the ERA. There a township filed a complaint under the ERA, subsequent to commencement of DEP action under the Spill Act. The ERA complaint was dismissed by the trial court as being preempted by the DEP action. On appeal we held that the effect of DEP's action under the Spill Act on the right of a private plaintiff to enforce the Spill Act pursuant to an ERA claim was a factually dependent question:
... the solution lies within the framework of the individual set of facts in each case. As noted the statutory authority and its legislative history make clear that it is the DEP which is entrusted initially with the right to determine the primary course of action to be taken against persons who damage or threaten the environment. In order to be effective, it must normally be free to determine what solution will best resolve a problem on a state or regional basis given its expertise and ability to view those problems and solutions broadly but that discretion is not unfettered.
We believe that the determination of whether DEP, in a given situation, has exercised properly its preemptive jurisdiction should be resolved by the court when it is asserted that, DEP has failed in its mission, neglected to take action essential to fulfill an obvious legislative purpose, or where it has not given adequate and fair consideration to local or individual interests. In other words where the state agency has failed or neglected to act in the best interest of the citizenry or has arbitrarily, capriciously or unreasonably acted, then a court should permit interested persons to continue with enforcement under the Environmental Rights Act. [Id. at 95-96 (emphasis in original)].
Thus, even where DEP enforces the Spill Act, a private cause of action may still lie if the effort provided by DEP enforcement proves insufficient. However, pursuit of the private ERA claim must await DEP action in order to assess the sufficiency of its efforts, actions and remedy. Hence, DEP's action under the Spill Act is preemptive of private rights under ERA at least where the DEP acts prior to or upon filing of an ERA proceeding and where the DEP action subsequently proves sufficient to protect the environment. Howell Tp. did not involve successive landowners or an ECRA proceeding.
Though the Spill Act establishes strict liability for contamination and cleanup, the determination of responsibility between or *62 among successive owners possibly liable for the contamination may impede the swift implementation of cleanup efforts as evidenced by the facts in Department of Environmental Protection v. Ventron Corp., 94 N.J. 473 (1983). There successive owner-operators of mercury processing operations over a span of 50 years contaminated a 40 acre tract with 268 tons of toxic waste. The litigation to determine liability consumed seven years during which cleanup efforts were stalled until the Supreme Court's 1982 denial of defendant's motion to stay enforcement of the judgment. Id. at 481-483, 468 A.2d 150. See also Note, The Environmental Cleanup Responsibility Act (ECRA): New Accountability for Industrial Landowners in New Jersey, 8 Seton Hall Legis. J. 331, 331-332 (1985).
The Environmental Cleanup and Responsibility Act (ECRA), N.J.S.A. 13:1K-6 et seq., was enacted in 1983, L. 1983, c. 330, in response to the problems illustrated by Ventron. As indicated by the Statement of the Senate Energy and Environment Committee, the object of the statute was to impose
... a precondition on the closure, sale or transfer of certain properties associated with the manufacture, refining, transportation, treatment, storage, handling, or disposing of hazardous substances or wastes. The precondition is the execution of an approved cleanup plan which details the measures necessary to detoxify the property, or the approval by the Department of Environmental Protection of a declaration that there has been no discharge of hazardous substances or wastes on the property or that any such discharge has been cleaned up in accordance with procedures approved by the department and there remain no hazardous substances or wastes on the property. [Senate Energy and Environment Committee Statement, Assembly No. 1231 (appended to N.J.S.A. 13:1K-6 at 139 (West. 1986))].
The Legislature's motive was clearly expressed in its finding
... that the generation, handling, storage and disposal of hazardous substances and wastes pose an inherent danger of exposing the citizens, property and natural resources of this State to substantial risk of harm or degradation; that the closing of operations and the transfer of real property utilized for the generation, handling, storage and disposal of hazardous substances and wastes should be conducted in a rational and orderly way, so as to mitigate potential risks; and that it is necessary to impose a precondition on any closure or transfer of these operations by requiring the adequate preparation and implementation of acceptable cleanup procedures therefor. [N.J.S.A. 13:1K-7].
*63 To that end, strict requirements are established requiring owners or operators of an industrial establishment planning to close, sell or transfer operations to give notice to DEP, N.J.S.A. 13:1K-9 and to develop and implement a DEP approved cleanup plan unless DEP defers the cleanup in certain specified instances. N.J.S.A. 13:1K-9 & 11. However, no "provisions of this act [are to] be construed to limit, restrict, or prohibit the department from directing site cleanup under any other statute, rule, or regulation." N.J.S.A. 13:1K-11c. Furthermore, "[a]ll obligations imposed by this act shall constitute continuing regulatory obligations imposed by the State." N.J.S.A. 13:1K-12 (emphasis added). Failure to comply
... is grounds for voiding the sale or transfer of an industrial establishment or any real property utilized in connection therewith by the transferee, entitles the transferee to recover damages from the transferor, and renders the owner or operator of the industrial establishment strictly liable, without regard to fault, for all cleanup and removal costs and for all direct and indirect damages resulting from the failure to implement the cleanup plan. [N.J.S.A. 13:1K-13a].
It is clear that ECRA was intended to avoid the delay in perfecting cleanup inherent in the determination of liability through litigation. Responsibility for the contamination plays no part in the ECRA process. Non-compliance subjects the violator to strict liability for costs without regard to fault. This conclusion is reinforced by the Legislature's characterization of ECRA-imposed obligations as regulatory. Environmental cleanup is deemed a precondition of the land transaction controlled by the DEP. The availability of other legal authority for DEP's direction of a site cleanup under the Spill Act or otherwise is simply an alternative means of remediation. In sum, ECRA avoids a delay similar to that in Ventron by imposing a self-executing duty to remediate without the necessity and delay of a determination as to liability for the contamination.

IV
It is basic in the construction of legislation that every effort should be made to harmonize the law relating to the same *64 subject matter. "Statutes in pari materia are to be construed together when helpful in resolving doubts or uncertainties and the ascertainment of legislative intent. Such enactments are to be considered `as a homogeneous and consistent whole, giving effect to all their provisions.'" State v. Green, 62 N.J. 547, 554-555 (1973) (quoting Watson v. Jaffe, 121 N.J. Super. 213, 214 (App.Div. 1972)).
Reading these statutes and their legislative history together gives effect to each as well as the entire legislative scheme. Thus, a statutory scheme emerges with respect to remediation by industrial land site owners or operators upon transfer of the land. The transfer triggers ECRA, imposing a regulatory obligation on the current owner before transfer to develop and, if necessary, to implement a cleanup plan. This obligation proceeds without regard to responsibility for the contamination itself. On the other hand, where ECRA proceedings are not initiated because no closing of the site is contemplated or no transfer of the land is involved, DEP can commence proceedings under the Spill Act, and if it does not, a private cause of action can be commenced under ERA. However, where proceedings are commenced under ECRA there is no reason to compel DEP to expend its limited resources in investigating or evaluating the responsible party. The public interest should be vindicated by the ECRA proceeding which should assure the cleanup. Cf. Howell Tp., supra. As the ECRA process is self-executing without regard to fault no investigation is required to determine liability for the contamination. Thus, DEP should have been dismissed as a party to the cause respecting the specific relief sought in the complaint. Similarly, the trial judge erred in remanding the matter to DEP under § 8 of ERA.

V.
Notwithstanding that DEP cannot be compelled to investigate and determine responsibility under the Spill Act because of *65 the pending ECRA proceeding, we nevertheless conclude that plaintiff can proceed with its common law actions against NL to assess liability for the contamination it caused. NL's arguments to the contrary are mistakenly premised on the notion that investigation and fact-finding is required under ECRA to determine the party responsible for the contamination and that the ECRA proceeding is preclusive. Although it is true that DEP has general statutory power to conduct administrative and investigative proceedings under N.J.S.A. 13:1D-9d and e, the liability which such fact-finding proceedings are intended to support is unrelated to the specific provisions of ECRA. As we have stated, the simple aim of ECRA is swift and thorough cleanup through a regulatory process; when an ECRA proceeding is pending the liability determination must be left to resolution in an action among the former and present owners and possessors of the property. Cf. Howell Tp., 207 N.J. Super. at 94.[4]
For the foregoing reasons we set aside the remand to DEP and affirm the denial of NL's motion to dismiss plaintiff's common law claims including those seeking declaratory and equitable relief under § 4b of ERA. We remand to the Chancery Division for further proceedings consistent with this opinion. We recognize that as a result of the ECRA proceedings before DEP, plaintiff may be required to expend substantial sums of money. We therefore suggest that the trial judge not delay determination of liability while awaiting completion of the ECRA proceedings, even though damages cannot be finally determined at that time. We also note that, if NL is ultimately adjudicated to be liable, its expenses could well be affected by determinations affecting the cost of cleanup in the ECRA proceedings. Therefore, we do not preclude an application by NL to intervene in the ECRA proceedings before the DEP for *66 the sole purpose of ensuring efficient cleanup at the lowest possible cost without jeopardizing effective remediation.
We do not retain jurisdiction.
NOTES
[1] For purposes of this appeal we will accept the allegations of plaintiff, as did the Chancery Division.
[2] Common law causes of action are asserted based on fraudulent concealment, negligent misrepresentation, nuisance, breach of covenant against acts and deeds, strict liability, gross negligence and reckless indifference. These common law claims are not in issue on this appeal and remain pending trial in the Chancery Division. We note, however, that common law claims were dismissed in Howell Tp. v. Waste Disposal, Inc., 207 N.J. Super. 80 (App.Div. 1986) as being unauthorized in an ERA proceeding.
[3] We do not interpret § 8 to empower a defendant in a private action under the Spill Act to join DEP and compel a DEP investigation or Spill Act proceeding.
[4] We expressly decline to pass on the issue relating to DEP obligations, authority or jurisdiction under the Spill Act when an action under ERA is commenced in the absence of an ECRA proceeding.