**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| ASHLAND LLC, INTERNATIONAL SPECIALTY PRODUCTS INC., et al., | ) ) ) | |
| Plaintiffs/Counterclaim Defendants, | ) ) ) | |
| v. | ) ) | C.A. No. N15C-10-176 EMD CCLD |
| THE SAMUEL J. HEYMAN 1981 CONTINUING TRUST FOR LAZARUS S. HEYMAN, et al., | ) ) ) ) | |
| Defendants/Counterclaim Plaintiffs. | ) ) ) ) | |

Submitted:  April 15, 2024
Decided:  May 30, 2024

*Upon The Ashland Parties' Motion for Reargument of the Court's April 8, 2024 Letter Decision on (1) Defendants/Counterclaim Plaintiffs' Motion for Judgment in Light of the Delaware Supreme Court's Decision and (2) Plaintiffs' Cross-motion for Summary Judgment on Counts I and V*
**DENIED**

On April 15, 2024, Ashland[1] filed The Ashland Parties' Motion for Reargument of the Court's April 8, 2024 Letter Decision on (1) Defendants/Counterclaim Plaintiffs' Motion for Judgment in Light of the Delaware Supreme Court's Decision and (2) Plaintiffs' Cross-motion for Summary Judgment on Counts I and V (the "Motion").  Subsequently, the Heyman Parties filed Defendants/Counterclaim Plaintiffs' Opposition to the Ashland Parties' Motion for Reargument of the Court's April 8, 2024 Decision (the "Opposition").  The Court has reviewed the Motion and the Opposition and has determined that no hearing is necessary.  For the reasons set forth below, the Motion is **DENIED**.

---

[1] Plaintiffs collectively will be called "Ashland," and Defendants/Counterclaim Plaintiffs, the "Heyman Parties."

1

## I.     LEGAL STANDARD

Superior Court Civil Rule 59(e) provides that a party may file a motion for reargument "within 5 days after the filing of the Court's Order or decision."[2]  The standard for a Rule 59(e) motion is well defined under Delaware law.[3]  A motion for reargument will be denied unless the Court has overlooked precedent or legal principles that would have controlling effect, or misapprehended the law or the facts such as would affect the outcome of the decision.[4]  Motions for reargument should not be used merely to rehash the arguments already decided by the court.[5]

## II.     DISCUSSION

In the Motion, Ashland argues that the Court overlooked: (1) that New Jersey law provides that ISRA is self-executing and, therefore, Losses arose from Sellers' breach without NJDEP enforcement of ISRA; (2) the SPA provides Ashland with indemnity for Sellers' breach of the ISRA provision; and (3) the Spill act is a statutory claim, not a claim under the SPA.  The Heyman Parties argue that Ashland's alleged damages stem from NJDEP's enforcement of the remedial obligations under the ACO, and thus, warrants dismissal of the ISRA and Spill Act claims.

The self-executing nature of ISRA does not lead to Ashland proposed conclusion that Ashland may recover its alleged damages in the absence of NJDEP's enforcement of ISRA. Ashland relies on New Jersey caselaw relating to ISRA's "self-executing" nature.[6]  As described therein, ISRA "was intended to avoid the delay in perfecting cleanup inherent in the

---

[2] Super. Ct. Civ. R. 59(e).
[3] *Kennedy v. Invacare Corp.*, 2006 WL 488590, at *1 (Del. Super. Jan. 31, 2006).
[4] *Woodward v. Farm Family Cas. Ins. Co.*, 2001 WL 1456865, at *1 (Del. Super. Aug. 24, 2001).
[5] *Id*.
[6] *Matter of Cadgene Fam. P'ship*, 286 N.J. Super. 270, 279, 669 A.2d 239, 244 (N.J. Super. App. Div. 1995); *In re Adoption of N.J.A.C. 7:26B*, 128 N.J. 442, 448, 608 A.2d 288, 291 (1992) (citing to *Superior Air Prod. Co. v. NL Indus., Inc.*, 522 A.2d 1025, 1035 (N.J. Super. App. Div. 1987).  The Environmental Cleanup Responsibility Act is the predecessor of ISRA.

2

determination of liability through litigation."[7]  ISRA "impos[es] a self-executing duty to remediate without the necessity and delay of a determination as to liability for the contamination."[8]  Furthermore, "the availability of other legal authority for [the NJDEP]'s direction of a site cleanup under the Spill Act or otherwise is simply an alternative means of remediation."[9]

Ashland concedes that the nearly $4 million in remedial costs that it has incurred arise under the ACO.[10]  Ashland contends, however, that those same costs arise under ISRA.  Thus, Ashland believes it is entitled to recover for those same costs under ISRA and/or the Spill Act even though the ACO allocates off-site, pre-closing remediation costs to Ashland, and it is through the ACO that the NJDEP has enforced those obligations.

Ashland reiterates its reasoning that ISRA is "self-executing."  But Ashland does not go into detail as to the effect of NJDEP's decision to direct cleanup efforts under the ACO, as opposed to other legal authority NJDEP has available at its discretion.  Ashland's conclusory invocation of ISRA's "self-executing" nature does not address the reality that Ashland undertook the off-site remediation of the Linden Site due to NJDEP's enforcement action under the ACO. Ashland cannot now recover for those costs on the basis of a statute upon which the NJDEP never enforced against either party.

Thus, the question is not whether Ashland may recover for alleged damages in the absence of NJDEP's enforcement of ISRA; but rather, whether Ashland may recover for alleged

---

[7] *Superior Air Prod. Co.* 522 A.2d at 1035.

[8] *Id.*

[9] *Id.*

[10] Letter on Behalf of the Ashland Parties in Response to the Court's February 19, 2024 Letter (D.I. No. 1151) ("Up through June 4, 2021, the Ashland Parties have incurred remedial costs totaling $4,026,385.57 to investigate/remediate contamination at and emanating from the LPH Site. Under New Jersey law, ISRA and the Spill Act *required the exact same off-site remediation* in 2011 that NJDEP required to be addressed under the ACO in 2015, so the compliance costs are not distinct.") (emphasis added); *See* Letter to The Honorable Eric M. Davis from William M. Lafferty, Esq. in response to the Court's February 19, 2024 Letter, Exhibit 5.

damages that may hypothetically arise under a statute which the NJDEP elected not to enforce but that covered the same compliance costs that arose under an alternative source of authority that NJDEP did elect to enforce. Ashland points to no caselaw mirroring the factual dynamics of this action nor gives additional support than its conclusory invocation of ISRA's "self-executing" nature to re-allocate off-site remediation costs to the Heyman Parties. Because the NJDEP has elected to direct its remedial efforts under the ACO, and not ISRA, Ashland's ISRA claim is not ripe for resolution.

Ashland identifies SPA Section 7.2(b) as a potential indemnity right for any potential breach of the ISRA provision. Ashland's interpretation is plausible. SPA Section 7.9 provides in relevant part that:

> …the rights and remedies under this Article VII, [and] Schedule 5.19 . . . are exclusive and in lieu of any and all other rights and remedies that the Seller Parties and Buyer may have under this Agreement or otherwise against each other with respect to any breach of any representation or warranty or any failure to perform any covenant or agreement set forth in this Agreement.[11]

SPA Section 7.2(b) provides Ashland with indemnity for "any breach of any covenant or agreement of the Seller Parties."

SPA Schedule 5.19, however, provides Ashland with an indemnification right for Losses other than those that arise out of the Linden Excluded Liabilities.[12] Accordingly, Ashland has no indemnification right under Schedule 5.19 for losses related to Linden property off-site liabilities.[13]

Whether the general right of indemnity under SPA Section 7.2(b) prevails over the more limited indemnity rights provided under Schedule 5.19 is an open question. The credits Ashland

---

[11] *See* § 7.9 of the SPA.
[12] *See* Section 4(a) of Schedule 5.19 of the SPA.
[13] *Samuel J. Heyman 1981 Continuing Tr. for Lazarus S. Heyman v. Ashland LLC*, 284 A.3d 714, 718 (Del. 2022).

for identifying a potential alternative indemnity right. Regardless, the Court's decision does not change based on the availability of an indemnification right or other remedy, because Ashland's ISRA claim is not ripe for resolution for the reasons already discussed above.

As to its Spill Act claim, Ashland argues that it has asserted a claim against LPH's independent liability that arose when it took title to the Linden Site after the closing. The Spill Act provides that: "any person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance, shall be strictly liable, jointly and severally, without regard for fault, for all clean up and removal costs no matter by whom occurred."[14] The Spill Act also imposes liability on owners of property acquired after September 1993 who knew of a discharge of the property that occurred prior to their ownership.[15] Liability may arise even if operations on a property have ceased.[16]

In *Russo v. Alfred Vail Mut. Ass'n,* the Superior Court of New Jersey Appellate Division affirmed a lower court decision that respected parties' privately allocated risk of loss for liability under the Spill Act.[17] In *Russo*, members of a housing association and their insurance carrier sued the housing association for costs incurred by the members in removing a storage tank for heating oil from the members' unit.[18] Notwithstanding the obligations imposed by the Spill Act on the housing association as the owner of the property,[19] the trial court found that a membership certificate placed responsibility of the tank on the members of the property unit. The appellate

---

[14] N.J.S.A. 58:10–23.11g(c)(1).

[15] N.J. Stat. Ann. § 58:10-23.11g(c)(3) (The Spill Act also imposes liability on "any person who owns real property acquired on or after September 14, 1993 on which there has been a discharge prior to the person's acquisition of that property and who knew or should have known that a hazardous substance had been discharged at the real property, shall be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs no matter by whom incurred.").

[16] *Marsh v. New Jersey Dept. of Environmental Protection,* 703 A.2d 927 (N.J. 1997) (holding a landowner liable for gasoline leakage even though the gas stations ceased to exist prior to the landowner's obtaining the property).

[17] 2006 WL 1096345, at *1 (N.J. Super. App. Div. Apr. 27, 2006).

[18] *Id.*

[19] *Id* at *2 (citing N.J.S.A 58:10-23.11 to -23.11z.)

court affirmed the trial court ruling, holding that "there is no basis in the Spill Act or the public policies on which it rests, for reassigning the remediation liability allocated" by the members and association themselves.[20]

The SPA and the Contribution Agreement, when read together, allocate remediation liabilities of LPH.[21]  As in *Russo*, the Court finds no basis to disturb the allocation of liabilities under SPA Section 2(e).  To the extent the Spill Act imposes any remediation obligations on LPH, the Court finds that such obligations must be construed in accordance with the SPA and Contribution Agreement.  Thus, the Court will not change its decision to dismiss Ashland's Spill Act claim to the extent it seeks to re-allocate liabilities the parties privately allocated under the SPA and Contribution Agreement.[22]

### III.    CONCLUSION

For the reasons set forth above, the Motion is **DENIED**.

Dated: May 30, 2024
Wilmington, Delaware

/s/ *Eric M. Davis*
Eric M. Davis, Judge

cc:    File&ServeXpress

---

[20] *Id.*; *see also Est. of Maglione v. Gulf Oil Corp.,* 2007 WL 527940, at *4 (N.J. Super. App. Div. Feb. 22, 2007) (release barred plaintiff's environmental contamination claims, including Spill Act claims); *see also Montville Twp. v. Woodmont Builders, LLC*, 2009 WL 3253911, at *6 (D.N.J. Oct. 7, 2009) (settlement barred plaintiff's Spill Act claims), *aff'd*, 436 F. App'x 87 (3d Cir. 2011).

[21] *See Ashland LLC v. Samuel J. Heyman 1981 Continuing Tr. for Heyman*, 2017 WL 1224506, at *6-7 (Del. Super. Mar. 30, 2017).

[22] Ashland's argument that the NJDEP has never enforced the Spill Act against LPH also fails.  Ashland presented this argument in its summary judgment briefing, and upon review of the record, the Court did not find that the NJDEP ever enforced a Spill Act claim against LPH.  *See* The Ashland Parties' Answering Brief In Opposition To The Heymans' Motion For Judgment In Light Of The Delaware Supreme Court's Decision And Cross-Motion For Summary Judgment On Count I And Count V at 3, 28, 39 (D.I. No. 1130); The Ashland Parties' Reply Brief In Further Support of Their Cross-Motion for Summary Judgment on Count I and Count V (D.I. 1142) at 18. Regarding Ashland's Spill Act claim for post-closing discharges, the Court did not dismiss Ashland's Spill Act claim based on post-closing discharges, as both parties appeared to agree that the claim survived the Supreme Court Decision. *See* Defendants-Counterclaim Plaintiffs' Opening Brief in Support of Their Motion for Judgment in Light of the Delaware Supreme Court's Decision at 1 ("Only Ashland's Spill Act claim based on post-closing discharges––if Ashland pursues it—survives the Supreme Court's decision.").