### In re The FLINTKOTE COMPANY and Flintkote Mines Limited, Debtor(s).

### The Flintkote Company and Flintkote Mines Limited, Movant(s)

v.

### 8 East Frederick Place, LLC, Respondent(s).

### No. 04–11300–JKF.

United States Bankruptcy Court, D. Delaware.

July 6, 2012.

James E. O'Neill, Kathleen P. Makowski, Laura Davis Jones, Sandra G.M. Selzer, Scotta Edelen McFarland, Curtis A. Hehn, Pachulski Stang Ziehl & Jones LLP, Mark T. Hurford, Campbell & Levine, LLC, William F. Taylor, Jr., McCarter & English LLP, Wilmington, DE, for Movants.

## MEMORANDUM OPINION[1]

JUDITH K. FITZGERALD,
Bankruptcy Judge.

Before the court are two motions for summary judgment filed by Debtors—(1) (Doc. No. 6239) with respect to a motion for relief from stay (Doc. No. 5902)[2] filed by 8 East Frederick Place, LLC (hereafter "8 East Frederick"),[3] and (2) (Doc. No.

---

1. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

2. 8 East Frederick seeks relief from stay to pursue an injunction against Debtors in New

Jersey state court with respect to alleged environmental causes of action.

3. In the pleadings 8 East Frederick is often referred to as "Rossi," the last name of its owner.

6240) with respect to Debtors' objection (Doc. No. 3593) and Supplemental Objection (Doc. No. 5973) to 8 East Frederick's Claim No. 2242.[4] For the reasons which follow, we will grant both of Debtors' motions for summary judgment, deny 8 East Frederick's motion for relief from stay, and sustain Debtors' objection and supplemental objection to 8 East Frederick's claim.

8 East Frederick asserts that relief from stay should be granted because it intends to seek injunctive relief and not damages from the New Jersey state court. We conclude that 8 East Frederick has not established cause for relief from stay [5] and has no cause of action under the environmental statutes it relies on. Those statutes either (1) do not apply or (2) require that 8 East Frederick have incurred cleanup costs for which it seeks contribution, or that regulatory authorities failed to act. 8 East Frederick has incurred no cleanup costs [6] and therefore has no cause of action under the environmental statutes. The New Jersey Department of Environmental Protection ("NJDEP") was and is involved in Debtors' efforts with respect to the property and, therefore, has not failed to act. Furthermore, the New Jersey Environmental Rights Act ("ERA") on which 8 East Frederick relies does not provide substantive rights and because 8 East Frederick has no claim or enforcement rights under the environmental statutes upon which it relies it has no cause of action under the ERA. Therefore, 8 East Frederick has not established cause for relief from stay and is not entitled to injunctive relief as a matter of law. It has no claim cognizable in bankruptcy.[7]

The facts are as follows and are either undisputed or are supported by the evidentiary record.

Debtors initially filed a non-substantive objection to claim at Doc. No. 2658 because 8 East Frederick's proof of claim contained no supporting documentation.[8] 8 East Frederick filed a response attaching a narrative explanation of its claim. The narrative alleged a contingent right to contribution under the New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10–23.11, *et seq.*, and several tort-based monetary claims. *Id.* In light of 8 East Frederick's supplemental narrative filing, a Consent Order was filed whereby Debtors withdrew their non-substantive objection to claim without prejudice to raising

---

**4.** 8 East Frederick's claim appears on the docket at Doc. No. 3769 which contains exhibits for Doc. No. 3768, 8 East Frederick's Response to Debtors' Substantive Objection to Claim.

**5.** Relief from stay can be granted "for cause." 11 U.S.C. § 362(d)(1).

**6.** Because it has never incurred cleanup costs, 8 East Frederick has a contingent unliquidated claim for contribution for environmental cleanup costs. Such claims are disallowed under 11 U.S.C. § 502(e)(1).

**7.** We also note that its claim was filed out of time. The bar date was January 31, 2005. The claim was filed on February 10, 2005. 8 East Frederick has never filed a motion for leave to file a late proof of claim.

**8.** The bar date for claims was January 31, 2005. 8 East Frederick filed a proof of claim on February 10, 2005. The proof of claim was for an unspecified and unliquidated amount and contained no supporting documentation. In response to Debtors' repeated requests for substantiation, 8 East Frederick instead presented a demand letter. Doc. No. 2658, Debtors' Non–Substantive Objection to Claim No. 2242, at 4, ¶ 12. Debtors' counsel met with 8 East Frederick's owner, Joseph Rossi, in July 2007, followed by a written request for supporting documentation and received none. *Id.* at ¶ 14. Instead, 8 East Frederick sent a second demand letter which likewise lacked documentary evidence substantiating the claim. Debtors then filed their non-substantive objection to 8 East Frederick's claim.

further objections. The Consent Order was entered by this court on November 21, 2007. Doc. No. 2839.

Thereafter, on August 29, 2008, Debtors filed a substantive objection to 8 East Frederick's claim. Doc. No. 3593. That objection was resolved in part pursuant to a Stipulation and Order entered on February 17, 2009. Doc. No. 4045. The Stipulation and Order provided that 8 East Frederick was to withdraw, with prejudice, Economic Loss Claims [9] and, within ten days of the Order, was to file an amended claim limited to claims, causes of action, and theories of recovery or liability that were expressly reserved in ¶ 6 of the Stipulation. Paragraph 6 provided that 8 East Frederick did not waive the right to

(i) seek to compel Debtors to conduct remedial investigations;

(ii) seek to compel Debtors to remediate;

(iii) seek contribution from Debtors for cleanup and removal costs as defined under the Spill Act and which are actually incurred by 8 East Frederick; and

(iv) refuse to accept a deed restriction or alternative remediation standard.[10]

Even though 8 East Frederick has never filed the amended proof of claim 1 [11] required by the Stipulation and Order, the parties have pursued the environmental issues reserved by 8 East Frederick.[12] In

9. Economic Loss Claims, as defined in the Stipulation and Order, were dismissed with prejudice. Those claims are defined in the Stipulation and Order as

(i) any alleged increased construction costs related to the proposed expansion of [8 East Frederick's] warehouse facilities due to the alleged presence of environmental contamination, subject to [8 East Frederick's] right to assert ... that [certain environmental statutes] ... require that the Property be remediated to a particular standard; (ii) any alleged diminution in value of the Property caused by the alleged presence of environmental contamination; (iii) any alleged lost rents due to any delay in improving the Property caused by the presence of alleged environmental contamination; and (iv) any alleged increased construction costs related to the delay in improving the Property allegedly caused by the presence of environmental contamination.

Doc. No. 4045 at 3, ¶ 1.

8 East Frederick also withdrew claims against certain of Debtors' directors and officers and certain state law claims that are not relevant to the matter currently before us.

10. Debtors have completed the investigation and remediation. 8 East Frederick has not incurred any cleanup expenses and has no right to contribution. Paragraph (iv) is in reference to the Historic Fill area and a deed restriction with respect to use of the area which was raised by the NJDEP. 8 East

Frederick rejects the concept of a deed restriction inasmuch as it wishes to develop the property for residential use, even though it is not zoned for such use at this time.

11. 8 East Frederick filed a motion (Doc. No. 5220) and corrected motion (Doc. No. 6098) for leave to file a late objection to Debtors' amended joint plan but never filed an amended proof of claim. The motion and corrected motion for leave were denied. Doc. No. 6158.

12. N.J.S.A. 2A:14-1 provides a six-year statute of limitations. Debtors had asserted that 8 East Frederick's claims were barred on statute of limitations grounds inasmuch as 8 East Frederick conceded that it knew of environmental issues at least by 1994 "or earlier." Doc. No. 3816, Debtors' Reply in Support of Substantive Objection to Claim, at 2–4. Documentation of record bears this out. *See* Doc. No. 3768, Response of 8 East Frederick to Debtors' Substantive Objection to Claim No. 2242, at 3, ¶ 8 ("In 1993, while performing excavation work in the southeast corner of the property, 8 E. Frederick discovered a drum containing asphalt and tar. Based on a review of all available records, as well as a review of the nature of Flintkote's operations at the Property, 8 E. Frederick believes that Flintkote systematically disposed of hazardous solid wastes and other dangerous sub-

the Stipulation and Order, 8 East Frederick reserved claims or causes of action under four New Jersey statutes and two federal statutes:

(1) the New Jersey Environmental Rights Act ("ERA"), N.J.S.A. 2A:35A–1, *et seq.;*

(2) the New Jersey Spill and Compensation and Control Act ("Spill Act"), N.J.S.A. 58:10–11(f)(2)(a);

(3) the New Jersey Industrial Site Recovery Act ("ISRA"), N.J.S.A. 13:IK–6, *et seq.;*

(4) the New Jersey Water Pollution Control Act, N.J.S.A. 58:10A–1, *et seq.;*

(5) the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq.;* and

stances at the Property over an extended period of time").

Moreover, 8 East Frederick first contacted Debtors in 1990 regarding the results of certain soil and water sampling conducted by an environmental consultant, Professional Planning and Engineering ("PPE") on behalf of a bank from which 8 East Frederick was seeking financing. Doc. No. 2658 at ¶ 20, at 6. PPE detected petroleum hydrocarbons and one metal compound (zinc) near a catch basin on the eastern side of the Property in concentrations exceeding then applicable soil action levels imposed by the NJDEP. Doc. No. 2658, ¶ 20. The levels at which these compounds were detected in 1990 by PPE are below the soil remediation standards currently established and enforced by the NJDEP. *Id.* at n.3. 8 East Frederick then contacted Debtors in October 1990 requesting that the conditions be addressed. Without admitting liability, Debtors engaged Woodward Clyde Consultants ("WCC") (now known as URS Corporation ("URS")) to investigate the catch basin area. Based on that investigation, Debtors advised 8 East Frederick that the contamination detected by PPE was related to the presence of historic fill at the Property and was not the result of any discharge for which Debtors were responsible. In a meeting on January 31, 1992, 8 East Frederick and its representatives informed Debtors' representatives that the contamination detected was no longer a concern. Doc. No. 2658 at 7, ¶ 20.

In 1994, 8 East Frederick again contacted Debtors to advise that, during the course of site work at the Property, certain debris had been uncovered that could have been related to Debtors' former operations. Debtors, through their environmental consultant, WCC (now URS), conducted an investigation and uncovered a limited area of mixed asphalt and tar in one section of the Property in soils

at approximately 12–18 inches below grade (the "Tarry Asphalt Area"). Upon receipt of a 1994 report of the investigation by WCC, Debtors informed the NJDEP of the findings and applied for a Memorandum of Agreement with the NJDEP for the purpose of pursing a voluntary cleanup of the Tarry Asphalt Area on the Property. In 1994 Debtors and the NJDEP entered into a Memorandum of Agreement ("MOA") under which Debtors agreed to conduct a remedial investigation of the area and, based on the results, to submit a proposed remediation action workplan ("RAW"). *Id.* at 8, ¶ 21.

After considerable negotiations with the NJDEP Debtors submitted a draft RAW to the NJDEP in January, 2001. *Id.* at 8, p. 23. At the request of the NJDEP, the RAW proposed the use of existing site improvements (such as the existing building and paved parking areas) as a cap over the residual contamination detected in the historic fill. Debtors also sought a no further action letter from the NJDEP upon completion of the remediation and wanted 8 East Frederick to record a Deed Notice limiting future use of the property consistent with its present use and zoning. Debtors sent the proposal to 8 East Frederick as well. Over five years later, after attempts to seek 8 East Frederick's approval and after several unsuccessful negotiation sessions with 8 East Frederick, Debtors submitted the RAW to the NJDEP. *Id.* at 9, ¶ 25. The RAW was modified several times and Debtors eventually remediated. *See* Transcript of January 23, 2012, Doc. No. 6708. The last documentary evidence presented to this court indicates that all concerns of the NJDEP addressed in certain Notices of Deficiency (September 17, 2010, and May 13, 2011) were addressed. *See* Letter of May 23, 2011, from Debtors' environmental consulting firm, URS, to NJDEP, Doc. No. 5950, Exhibit D.

(6) the Federal Water Pollution control Act ("Clean Water Act"), 33 U.S.C. § 1251, *et seq.*

(1) *The Environmental Rights Act ("ERA").*

■ The ERA does not confer any substantive rights, and its purpose is to limit lawsuits by private litigants to those instances where the government has failed to act. *Mayor & Council of Borough of Rockaway v. Klockner & Klockner,* 811 F.Supp. 1039, 1054 (D.N.J.1993) ("*Rockaway* ").

■ "The primary prosecutorial responsibility for enforcing the state's environmental laws resides in the government, and the [ERA] anticipates private parties' standing only when the government has failed to properly act." [13] *U.S. v. CDMG Realty Co.,* 875 F.Supp. 1077, 1086 (D.N.J. 1995) (re CERCLA), *vacated on other grounds,* 96 F.3d 706 (3d Cir.1996), citing *Superior Air Products Co. v. NL Industries, Inc.,* 216 N.J.Super. 46, 522 A.2d 1025 (1997).[14] In the matter before us, as in *CDMG Realty,* the NJDEP is involved in the effort to redress the contamination at the subject property and "unless and until the government can be shown to have fallen short in its dedication to full enforcement of the respective statutes and regulations," 8 East Frederick cannot maintain an action pursuant to the ERA. *CDMG,* 875 F.Supp. at 1086, citing *Allied Corp. v. Frola,* 730 F.Supp. 626, 636 (D.N.J.1990). No such evidence has been submitted.

■ "The primary goal of the [ERA] is to limit lawsuits by private litigants to those instances where the government has not acted." *Rockaway,* 811 F.Supp. at 1054. In order to bring an action under the ERA there must be "an allegation that a person is in violation, either continuously or intermittently, of a statute, regulation or ordinance, and that there is a likelihood that the violation will recur in the future." *Bowen Engineering v. Estate of Reeve,* 799 F.Supp. 467, 479 (D.N.J.1992), *affirmed* 19 F.3d 642 (3d Cir.1994). Inasmuch as Debtors sold the property decades ago, any violation occurred before the sale. Debtors are not and cannot be in continuing violation and there is no likelihood that they will be responsible for future violations because they no longer are located at the property. 8 East Frederick therefore has no cause of action against Debtors through the ERA. *Id.*

(2) *The Spill Act*

■ A right of contribution exists under the New Jersey Spill Act if a claimant has performed cleanup and incurred costs. *Bowen Engineering v. Estate of Reeve,* 799

---

**13.** *See, e.g.,* Doc. No. 6565, Excerpts of Evidentiary Record Demonstrating No Ongoing Pollution at Exhibit B, Letter of February 8, 2011, from Marion Craig (URS) to Ellen Hutchinson (NJDEP). This letter was in response to the September 17, 2010, notice of deficiency. The February 2011 letter was written after that dated August 6, 2010, from 8 East Frederick's counsel to Ms. Hutchinson. *See id.* at Exhibit G. We further note that in this 2010 letter counsel for 8 East Frederick acknowledges the NJDEP's involvement as it refers to NJDEP's "commit[ment] to approving the proposed 2006 Remedial Action Work Plan ("RAW"), revised in 2008 and 2009, submitted by Flintkote" after two prior commitment letters in 2008 and 2009. In that same letter counsel for 8 East Frederick stated that 8 East Frederick "is prepared to accept much of what Flintkote proposes to do" but cited a concern with "sticky tar."

**14.** "Rights" under the ERA arise only when the government fails or neglects to act. *Rockaway,* 811 F.Supp. at 1054. "Rather, it grants private plaintiffs standing to enforce other New Jersey environmental statutes 'as an alternative to inaction by the government which retains primary prosecutorial responsibility.' " *Id.*

F.Supp. 467, 478–79 (D.N.J.1992). 8 East Frederick has not done so and, therefore, has no right of contribution under the Spill Act. Because it has no cause of action under the Spill Act, 8 East Frederick does not have a right of action under the ERA with respect to the Spill Act.

### (3) ISRA

■■■ This statute requires that a site be investigated and remediated before the property is transferred. *North Bergen I, LLC v. New Jersey Dept. of Environmental Protection,* 2011 WL 2682952 *1, n. 2 (N.J.Super., July 12, 2011). This statute did not exist before 1983 and the transfer to 8 East Frederick was long before that. Accordingly, 8 East Frederick has no cause of action under this statute and no cause of action under the ERA to enforce ISRA.

### (4) The New Jersey Water Pollution Control Act

The NJDEP has agreed with Flintkote's consultant that there is no threat to groundwater. Doc. No. 5950, Attachment 1, Craig Declaration, at ¶ 11. Therefore, this statutory provision does not give 8 East Frederick a claim against Debtors and 8 East Frederick has no cause of action under the ERA with respect to this statute. Furthermore, 8 East Frederick's counsel accepted the NJDEP determination with respect to ground water. *See* Letter of August 6, 2010, from Jeffrey M. Pollock, counsel for 8 East Frederick, to Ellen Hutchinson, NJDEP, Doc. No. 6565 at Exhibit G.[15]

---

15. At the January 23, 2012, hearing 8 East Frederick's counsel continued to assert that there is ongoing groundwater pollution. *See* Tr. 1/23/12, Doc. No. 6708, at 37. That assertion was based on a 2008 report of Joseph Hochreiter. That document is based on information provided by 8 East Frederick and contains assumptions by its author that Debtors are liable simply because Debtors occupied the property before 8 East Frederick.

Debtors submitted evidence of more recent origin. "At the NJDEP's request [Debtors] installed a groundwater monitoring well in this area. Sampling has shown no groundwater contamination" in that area. Doc. No. 6565, Exhibit J, Declaration of Marion Craig dated June 9, 2011, in Support of Debtors' Objection to Motion for Relief from Stay at 4–5, ¶ 17. *See also* 6565 Exhibit F May 23, 2011, at 1, 3, Letter Report from Marion Craig (URS) to Ellen Hutchinson (NJDEP) ("As described in more detail below, the groundwater samples were good and the purpose of this letter is to summarize and deliver to the NJDEP the results of that sampling and address certain other issues involved in these NODs [Notices of Deficiencies].... At the further request of the NJDEP, on April 14, 2011[,] a monitoring well (MW –5) was installed in the southwest corner of the excavation area.... no threat to groundwater quality exists").

Debtors' consultant, URS Corporation, has taken more than 98 soil samples from over 78 locations and repeatedly sampled five groundwater monitoring wells throughout the subject property, Doc. No. 6609 at 3, ¶ 3, citing exhibits at Doc. No. 6565, and concluded that there is no threat to groundwater. *See* Craig Declaration in Support of Debtors' Objection to Motion for Relief from Stay, Doc. No. 5950–1, at ¶ 11 at 3–4. *See also* Supplemental Remedial Investigation Report, June 26, 2009, Doc. No. 5950 at Exhibit B. The NJDEP agrees that there is no ongoing threat to groundwater and it and Debtors' consultant "support[ ] the use of 'engineering controls,' i.e., capping the site with soil or paving, and then restricting the use of the property to its current non-residential use through a deed restriction." Doc. No. 6609 at ¶ 4, citing Doc. No. 6565 at Flintkote Exhibit G at 2, Flintkote Exhibit I at 3–6, and Flintkote Exhibit K at 4. 8 East Frederick does not agree to a deed restriction, although it currently uses the site as a truck depot and other commercial purposes, as it aspires to use the property at some point for residential development, *see* Doc. No. 6565, Exhibit G, Letter dated August 6, 2010, from 8 East Frederick's counsel to Ellen Hutchinson of the NJDEP, although it is not currently zoned for residential development. Debtors' recitation of the NJDEP's position in this regard has not been

(5) *The Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA")*

■■■ 8 East Frederick asserts a private right of action under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601 *et seq.*, but a creditor must have actually incurred response costs in order to pursue a contribution claim under CERCLA. *See U.S. v. Atlantic Research Corporation,* 551 U.S. 128, 131, 127 S.Ct. 2331, 168 L.Ed.2d 28 (2007)(§ 107(a) of CERCLA (42 U.S.C. § 9607(a)(1)-(4)) provides potentially responsible parties ("PRP")with a cause of action to recover costs from other PRP but they must have actually incurred costs in order to sue for contribution).[16] *See also* 42 U.S.C. § 9613(f)(1) ("Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a)").[17] 8 East Frederick has not incurred any such costs. Accordingly, it has no cause of action under the ERA.

(6) *The Federal Water Pollution Control Act ("Clean Water Act")*

■■■ Although injunctive relief is a remedy under the Clean Water Act, inasmuch as there is no threat to groundwater, *see* note 15 and accompanying text, *supra,* 8 East Frederick has no cause of action. Furthermore, "citizen suits" under this statute are authorized only with respect to present violations of "(A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation." 33 U.S.C. § 1365(a)(1).[18] *See also Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.,* 484 U.S. 49, 59, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987).[19] These prerequisites do not exist in this case. Further, "to the extent that the Clean Water Act purports to maintain the integrity of the nation's waters, the Act does not authorize private causes of action against polluters absent some showing of injury or threat of injury." *Public Interest Research Group of New Jersey,*

---

contradicted and the NJDEP has not appeared in this matter.

**16.** Section 106, 42 U.S.C. § 9606(a), authorizes the President, through the Environmental Protection Agency, to seek an injunction to force cleanup by a responsible party when there is an "imminent and substantial" danger to public health, welfare, or the environment. It does not confer such authority on private citizens. *Rockaway, supra,* 811 F.Supp. at 1046.

**17.** "Contribution is defined as the 'tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault.' Black's Law Dictionary 353 (8th ed. 2004). Nothing in § 113(f) suggests that Congress used the term 'contribution' in anything other than this traditional sense." *Atlantic Research Corp.,* 551 U.S. at 137–38, 127 S.Ct. 2331. "By contrast, § 107(a) permits recov-

ery of cleanup costs but does not create a right to contribution. A private party may recover under § 107(a) without any establishment of liability to a third party. Moreover, § 107(a) permits a PRP to recover only the costs it has 'incurred' in cleaning up a site. 42 U.S.C. § 9607(a)(4)(B)." *Id.* at 139, 127 S.Ct. 2331.

**18.** Civil actions may also be commenced against the Administrator of the EPA where a failure to perform any nondiscretionary act or duty of the Administrator is alleged. 33 U.S.C. § 1365(a)(2).

**19.** "One of the most striking indicia of the prospective orientation of the *citizen suit is* the pervasive use of the present tense.... A citizen suit may be brought only for violation of a permit limitation 'which is in effect' under the Act.... the harm sought to be addressed by the citizen suit lies in the present or the future, not in the past." *Gwaltney, supra,* 484 U.S. at 49, 108 S.Ct. 376.

*Inc. v. Magnesium Elektron Inc.,* 123 F.3d 111, 120 (3d Cir.1997).

*Summary Judgment*

"Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law." *Liberty Lincoln–Mercury, Inc. v. Ford Motor Co.,* 676 F.3d 318, 323 (3d Cir.2012). Although 8 East Frederick continues to press its argument that there are unaddressed contamination issues at the property with respect to groundwater, the most recent uncontradicted reports of Debtors' environmental consultant,[20] *see* Doc. No. 6565, establish that this is not so. Further, remediation has been completed with respect to the Tarry Asphalt Area and there is no ongoing pollution related to Debtors' former activities at the site.[21]

■ While responsibility for the Historic Fill Area is disputed, the nature of its environmental impact is of limited concern, according to Debtors' environmental consultant's findings which are not contradicted by any evidence proffered by 8 East Frederick.[22] The evidence establishes that this is because the levels of contamination are relatively low and, therefore, the NJDEP focus has been on limiting surface contact with the Historic Fill. In this case there is an asphalt parking lot but it had deteriorated by the year 2000. Ordinarily, intact ground cover, such as an asphalt parking surface or building, serves as a sufficient barrier. However, by the year 2000 the parking lot areas, which belong to and are maintained by 8 East Frederick, no longer served as an adequate cap for the Historic Fill due to substantial deterioration. Doc. No. 6565, Declaration of Marion Craig dated June 9, 2011, in Support of Debtors' Objection to Motion for Relief from Stay at Exh. J, at ¶ 20. However, in January of 2011,

**20.** Debtors's environmental consultant filed a Declaration which states, in part, as follows:

> In response to [8 East Frederick's] complaints regarding liquid tar in the North Parking Area, Flintkote has repeatedly taken test samples in this area, finding no actionable contamination. Over this past winter, in an attempt to resolve additional concerns raised by [8 East Frederick] to the NJDEP regarding the North Parking Area, instead of conducting additional sampling, Flintkote simply dug up a large area indicated by [8 East Frederick] as involving liquid tar and remediated the area with clean fill and a new asphalt cover. At the NJDEP's request Flintkote installed a groundwater monitoring well in this area. Sampling has shown no groundwater contamination in the North Parking Area. While removing the soil, Flintkote discovered a thin layer of solid tar approximately 3 feet below the surface. Given the depth and nature of this material, Flintkote does not believe that this is the source of the liquid tar observed by [8 East Frederick]. Rather, it is more likely that the poor maintenance and patching of the asphalt in this area is the source of the alleged seeps.

Doc. No. 6565, Declaration of Marion Craig dated June 9, 2011, in Support of Debtors' Objection to Motion for Relief from Stay at Exh. J, at ¶ 17.

> The materials used in historic fill in New Jersey are commonly contaminated with metals and low levels of petroleum hydrocarbons and related polycyclic aromatic hydrocarbons. Historic fill also commonly contains construction debris such as ash, tar, brick, wood and concrete. URS has confirmed that the Historic Fill found throughout the Rossi Property is consistent with these characteristics.

*Id.* at ¶ 19.

**21.** 8 East Frederick relies solely on the 2008 Hochreiter report which predates the cleanup activity and evidence proffered by Debtors.

**22.** Again, 8 East Frederick's sole evidence is the 2008 Hochreiter report which is based on information the preparer obtained from 8 East Frederick and not on independent inspection and analysis. Since 2008 much has occurred at the Property and Debtors' evidence is the only record of the current state of affairs.

approximately 168 tons of soil and debris were removed from this area (Figure 1). Historical fill material was found to extend to a depth of 3 to 4 feet below grade. A thin layer of hardened tar was identified at a depth of approximately 3 feet below grade in the west end of the excavation. Isolated pockets of hardened tar were also identified within the subsurface fill. Excavated materials were stockpiled on plastic and covered with plastic sheeting. Four sidewall soil samples and one floor sample were collected from the excavation.... The excavation was backfilled with clean imported fill.... On February 9, 2011, the excavated materials were removed from the site and transported to Apex Sanitary Landfill in Amsterdam Ohio for disposal.... The excavation area was re-paved with asphalt on April 21, 2011.

*Id.* at Exh. F at 1–2.[23]

Based on the foregoing, 8 East Frederick's motion for relief from stay will be denied, Debtors' objection and supplemental objection to claim will be sustained and summary judgment with respect to both will be granted in favor of Debtors.

An appropriate order will be entered.

## ORDER (1) GRANTING DEBTORS' MOTIONS FOR SUMMARY JUDGMENT, (2) SUSTAINING DEBTORS' OBJECTION TO CLAIM, AND (3) DENYING THE MOTION FOR RELIEF FROM STAY FILED ON BEHALF OF 8 EAST FREDERICK PLACE, LLC

**AND NOW,** this **6th** day of **July, 2012,** for the reasons stated in the foregoing Memorandum Opinion, it is **ORDERED** that Debtors' motion for summary judgment with respect to its objection to 8 East Frederick's motion for relief from stay is **GRANTED.**

It is **FURTHER ORDERED** that Debtors' motion for summary judgment with respect to its objection to 8 East Frederick's claim is **GRANTED.**

---

**23.** The May 23, 2011, letter from URS to the NJDEP went on to report that

Overall, the type and concentrations of [polyaromatic hydrocarbons] identified in the excavation samples are consistent with those identified previously in historic fill throughout the site and do not indicate a discrete area of unique material. This has been confirmed through discussions with the Department and its own observations during the excavation. Finally, it was our understanding at that time that no substantial additional work would be needed in this area except that, as requested by Brian Crisufulli of NJDEP in his email dated January 11, 2011, the western portion of the excavation area would need to be checked during the summer to ensure that, during warm weather conditions, the subsurface tar seam in the west end of the excavation does not mobilize to the surface of the asphalt.

Doc. No. 6565, Exh. F, May 23, 2011, URS Letter to NJDEP at 3.

... At the further request of the NJDEP, on April 14, 2011 a monitoring well (MW–5) was installed in the southwest corner of the excavation area.

*Id.* Further,

Regarding the North Parking Area, in response to and consistent with the September 17, 2010 NOD, approximately 168 tons of historic fill, including hardened tar, has been removed from this area. The removal of hardened tar in this area, combined with the existing asphalt cover, should prevent future upward mobilization of any tar located well below the surface. Also, as demonstrated by the groundwater well results in this area, despite the presence of tar in the subsurface in this area, no threat to groundwater quality exists. Given these conclusions, Flintkote's [sic] believes that it has complied in full with the terms of the September 17, 2010[] NOD regarding the North Parking Area.

*Id.*

It is **FURTHER ORDERED** that Debtors' objection and supplemental objection to 8 East Frederick's claim are **SUSTAINED.**

It is **FURTHER ORDERED** that 8 East Frederick's motion for relief from stay is **DENIED WITH PREJUDICE.**